UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2009 JUL -6 P 4:07
U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| TINA PACHECO | : | |
| Plaintiff, | : | 3:09 cv-00488-AWT |
| v. | : | |
| JOSEPH MCMAHON CORPORATION D/B/A UNITED OBLIGATIONS, MARILYN MILLER & PAUL MILLER | : | |
| Defendants | : | JULY 2, 2009 |

## SUPPLEMENTAL AFIDAVIT IN SUPPORT OF

## OBJECTION TO MOTION FOR SUMMARY JUDGMENT

The undersigned defendant submits this supplemental affidavit of Marilyn M. Miller, in support of the objection as stated in the above captioned matter, as attached exhibit A.

The Defendant,

Paul Miller
1290 Post Road #2213
Fairfield, CT 06824
203.292.8143
866.891-8903  Fax
Laforzallc@yahoo.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TINA PACHECO | : |
| | : |
| Plaintiff, | : 3:09 cv-00488-AWT |
| | : |
| v. | : |
| | : |
| JOSEPH MCMAHON CORPORATION | : |
| D/B/A UNITED OBLIGATIONS, | : |
| MARILYN MILLER & PAUL MILLER | : |
| | : |
| Defendants | : JULY 2, 2009 |

## CERTIFICATION

I, Paul Miller, respectfully submit that a copy of the foregoing was mailed to all parties of record on July 2, 2009.

Joanne Faulkner, Esq.
123 Avon Street
New Haven, CT 06511

                                                                                                                        The Defendant,

                                                                                                                        Paul Miller
                                                                                                                        1290 Post Road #2213
                                                                                                                        Fairfield, CT 06824
                                                                                                                        203.292.8143
                                                                                                                        866.891-8903  Fax
                                                                                                                        Laforzallc@yahoo.com

# Affidavit

1. I am a Marilyn Miller, a natural person residing in Southport, Connecticut. I am over 18 years old and I understand the obligation of an oath.
2. I am a principal of Joseph McMahon Corporation dba United Obligations.
3. I am the mother of two minor sons, aged 15 years and 11 months, Robert and William.
4. I am married to Paul Miller, an individual.
5. I have only personally met Ms. Pacheco once, when we were introduced during our mutual participation in a Town of Fairfield Election Day effort. This is the first time I ever personally met Mr. Pacheco's minor son, Jeremie. Upon being introduced to Jeremie, I immediately recognized him (from his name) as a member of my sons' close circle of friends. To my knowledge, he has been their friend for a couple of years.
6. The first time I ever heard my children mention Ms. Pacheco's son was approximately two years ago, when her son fell through thin ice on a pond in town. My sons were with him at the time, and one of my children called the EMT to rescue Jeremie. Jeremie was not seriously injured in the accident.
7. Like any mother, I was very upset when I learned about this incident, and I used it as an opportunity to teach my children about the danger of walking on thin ice. As a mother, I was thankful that my children had shown good judgment, and also proud that my son had had the foresight to take action and call the EMT, an action which may have saved Jeremie's life.
8. On December 31, 2008, my children hosted a New Years' Eve party for their friends. Jeremie Pacheco was invited, and Tina M. Pacheco called my home to verify that there would indeed be adult supervision in the home. When Ms. Pacheco called me, in confirming that my husband and I would indeed be home all night, I reintroduced myself to Ms. Pacheco as the same person whom she met the previous November on Election Day.
9. My husband and I were home with the children and their guests all night on New Years' Eve. My husband had a long conversation with Jeremie regarding his studies in drafting. My husband remarked to me later that he really liked Jeremie and was impressed with his understanding of the subjects he was studying. I reminded my husband that Jeremie was the same person who had fallen through the ice.
10. In January of 2009, both debts owed by Ms. Pacheco were assigned to Paul Miller as trustee by the original creditors. Paul Miller is neither a principal nor an employee of Joseph McMahon Corporation.

EXHIBIT A

11. In January of 2009, a debt owed by Ms. Pacheco placed with my company by Dr. Benjamin Schultz, a dentist practicing in Fairfield, CT who assigned the debt to Paul Miller Trustee.
12. In February of 2009, a debt owed by Ms. Pacheco was placed with my company by Dr. Paul Dengelegi, a dentist from Fairfield, CT who assigned the debt to Paul Miller Trustee.
13. For both collection files, I had financial agreements signed by Ms. Pacheco whereby Ms. Pacheco agreed to take responsibility for all amounts not covered by insurance and also agreed to the responsibility for interest and collection costs on unpaid balances.
14. I recognized the debtor as Tina Pacheco and the mother of Jeremie Pacheco and I took both files in my name (as operator) to insure that the files were handled with the best possible care due to the delicate nature of the personal connection with Ms. Pacheco.
15. In January and February 2009, multiple attempts were made to reach Ms. Pacheco by telephone at numbers she had provided for contact. Initially, I was able to leave a voicemail with the name of my company and a callback number. I did not personally identify myself in any of these messages. After a short period of time, someone at the numbers listed for Ms. Pacheco simply picked up the phone and hung it up.
16. By late February 2009, both my clients Schultz and Dengelegi had requested and authorized small claims actions against Ms. Pacheco.
17. On or about March 5, 2009, I made a decision to contact Ms. Pacheco personally to try to explain to her the gravity of the situation. I made the decision to call Ms. Pacheco based on my personal experience with her son, and the connection I always felt to him from the day of the accident on the ice pond. I felt that if I could reach Ms. Pacheco and make a personal appeal to her, that I could perhaps reach some sort of accord with her, and possibly convince my clients to delay legal action.
18. I placed a phone call to Ms. Pacheco and left her a voicemail. A paraphrase of my message was, "Tina, this is Marilyn Miller, the mom of Billy and Bobby McMahon, would you please call me, I need to speak with you about something important." I remember making a decision not to mention specific information about the debt because I did not want to leave third party information on the voicemail for others to hear. I recall that I did not use the word "emergency" in my voicemail. I recall that I mentioned only my children in the phone message, not Ms. Pacheco's children.
19. Ms. Pacheco called me back approximately thirty (30) minutes later. My recollection is that I thanked her for calling back, and I told her that I had made the phone call to her due to the personal relationship between our children, and also due to our mutual participation in the Town of Fairfield Democratic Party, and my recollection of

    meeting her on a very happy day, 2009 Election Day, when our party's candidates were widely victorious, both locally and nationally.

20. I began to explain to Ms Pacheco that I was calling her regarding two accounts that were placed with me for collection, and she interrupted me and stated that I was, to paraphrase, "the lowest of the low, trying to use our kids to get money out of her." She said, "I am done with you," and hung up.

21. I absolutely did not mean to trick Ms. Pacheco into calling me. I made a phone call to her as a personal appeal and to help her.

22. I was extremely upset by Ms. Pacheco's reaction to my phone call for quite a few days in that her accusations were so far off base from the true intent of my action, and in fact, so contrary to my personal nature and character.

23. We discussed the situation with the original creditors Dr. Schultz and Dr. Dengelegi and told them that we believed that we had exhausted all options for collection and should proceed to litigation.

24. I placed both accounts with my attorney, Karen M. Riggio of Stamford, Connecticut who has filed Small Claims actions in both cases.

25. I have been personally and emotionally affected by the entire situation regarding this collection and Ms. Pacheco's reaction to my efforts of goodwill. I have sought professional help with Dr. Amy Payson, a psychotherapist practicing in Fairfield, CT, and have discussed the situation with Dr. Payson. I continue to be under Dr. Payson's case, and have incurred costs for both treatment and medication.

26. Ms. Pacheco has shared her version of the situation with her son Jeremie who in turn shared them with my son Robert, who was extremely upset by the situation. My sons knew nothing of the situation with Ms. Pacheco until Jeremie came to Robert with the news. I have instructed my sons that what exists between adults should stay with adults and that none of these issues should affect their personal relationships with their friends. To my knowledge, the boys still remain friends today. My son Robert, however, remains fearful of any repercussions of the actions Ms. Pacheco is taking against me and my family.

Under penalties of perjury, I declare the foregoing statements to be true, correct and complete.

*Marilyn Miller* (signature)

Marilyn Miller
Southport, CT
June 2, 2009