```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-----------------------------------x
TINA PACHECO,                      :
                                   :
          Plaintiff,               :
                                   :
v.                                 :    CASE NO. 3:09CV488(AWT)
                                   :
JOSEPH McMAHON CORPORATION d/b/a   :
UNITED OBLIGATIONS; MARILYN        :
MILLER; and PAUL MILLER,           :
                                   :
          Defendants.              :
-----------------------------------x
PAUL MILLER,                       :
                                   :
          Counter-Plaintiff,       :
                                   :
v.                                 :
                                   :
TINA PACHECO,                      :
                                   :
          Counter-Defendant.       :
-----------------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Tina Pacheco ("Pacheco"), has moved for summary judgment on her claim pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") against pro se defendant, Paul Miller, requesting $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k, plus attorneys' fees and costs.  For the reasons set forth below, the plaintiff's motion for summary judgment is being granted.

**I. FACTUAL BACKGROUND**

Joseph McMahon Corporation, which has as its registered trade name "United Obligations", is in the business of collecting consumer debts and is a licensed consumer collection agency. Marilyn Miller is its president and CEO, and she holds 95% of the

outstanding shares of stock of Joseph McMahon Corporation.  Paul Miller is in the business of acquiring third party debt from original creditors by means of an assignment.  He uses Paul Miller Trustee as a trade name.

As the president and CEO of Joseph McMahon Corporation, Marilyn Miller personally reviewed every file submitted by Paul Miller for collection.  In January 2009, Paul Miller acquired and was assigned two separate debts owed by Pacheco to Dr. Ben Schultz and Dr. Paul Dengelegi.  He then submitted the debts to Joseph McMahon Corporation for collection.  Paul Miller is the statutory agent for service of process for Joseph McMahon Corporation, but he has never been an officer, director, shareholder or employee of Joseph McMahon Corporation.

Marilyn Miller licensed her agency with the State of Connecticut Department of Banking, with an office address of 1080 Mill Hill Terrace, Southport, CT ("Southport Address").  Under the license, the agency is authorized to have a mailing address at 1290 Post Road, #2213, Fairfield, CT ("Fairfield Address").

Marilyn Miller made several telephone calls to Pacheco announcing herself as a debt collector each time, and on each occasion, once Pacheco learned that Marilyn Miller was calling about the debts assigned by Dr. Shultz and Dr. Dengelegi to Paul Miller, Pacheco hung up the telephone.  She then commenced litigation against Pacheco.

On or about March 2, 2009, Marilyn Miller made a decision to contact Pacheco, using as an entree the fact that their children went to school together, to try to explain to Pacheco the gravity of the debt situation. Marilyn Miller viewed this as a final attempt to reach an accord with Pacheco. Marilyn Miller called Pacheco and left the following message on Pacheco's answering machine:

> Hey, um, this is a message for Tina. I hope I have the right number. It's Tina Pacheco. Uh, Tina, I'm, uh, the mother of Billy and Bobbie McMahon. They're friends with Jeremie, um, at Ludlowe. Could you, . . . I'm going to give you my cell number, this is my home line, but give me, call me on my cell, which is 257-4394. Um, I'm also in the DTC, I don't know if you remember me. But anyway, give me a call at 257-4394. Thanks, again, my name is Marilyn Miller. Thanks.

(Tina Pacheco Affidavit (Doc. No. 21-3) ("Pacheco Aff.") ¶ 2). Pacheco's caller id showed that the call came from 203-292-5326.

Pacheco was worried that something had happened involving their respective children, so she called the cell phone number left by Marilyn Miller. After several rings, the cell phone number went to a voice message stating that she had reached "United Obligations." Pacheco then called back the number that had appeared on her caller id, which Marilyn Miller had identified as Miller's home line. Marilyn Miller answered and reminded Pacheco about the personal relationship between their children, their mutual participation in the Town of Fairfield Democratic Party, and her recollection of meeting Pacheco during

3

an event related to election day in 2009.  Marilyn Miller then proceeded to discuss the two debts.  Pacheco became very upset and hung up the telephone.

On March 11, 2009, Paul Miller sent an email to Pacheco, which stated:

> Tina: I was thinking, that rather than fight and have this cost you a fortune in legal fees, that maybe you call me and we discuss a reasonable way to work out the balance.  I represent both Dr. Shultz and Dr. Dengegegi.  Your balance will be in excess of $2000, before legal fees.  Give me a call.  I am sure we can work something out.
>
> Paul Miller
>
> P.S. Please understand that I advised Marilyn as to how to handle the situation, so that our children would not be involved.  This is none of their concern and will remain that way.  We all have bills.  So join the club.
>
> UNITED OBLIGATIONS
> 1290 Post Road Suite 2213
> Fairfield, CT 06824
> (203) 254-7924
> (866) 891-8903 Fax
>
> This is an attempt to collect a debt and any information obtained will be used for that purpose.

(Pacheco Aff. ¶ 9 Exhibit).  Below that portion of the email was a standard notice of confidentiality.

Holly Miller, the secretary and director of Joseph McMahon Corporation, avers that she witnessed the email sent by Paul Miller to Pacheco and was "directly involved in the construction and authority to send" the email.  Holly K. Miller Affidavit (Doc. No. 28) ¶ 4.

4

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case. See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). The court construes the facts in the light most favorable to the nonmoving party. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2002), cert. denied, 127 S. Ct. 382 (2006). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

Because defendant Paul Miller is proceeding pro se, the court must read defendant Paul Miller's pleadings and other documents liberally and construe them in a manner most favorable to defendant Paul Miller. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Moreover, because the process of summary judgment is "not obvious to a layman," Vital v. Interfaith

Medical Ctr., 168 F.3d 615, 620 (2d Cir. 1999), the district court must ensure that a pro se defendant understands the nature, consequences and obligations of summary judgment, see id. at 620-621.  Thus, the district court may itself notify the pro se defendant as to the nature of summary judgment; the court may find that the moving party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the pro se defendant understands the nature, consequences, and obligations of summary judgment.  See id.

After reviewing the record in this case and considering defendant Paul Miller's educational and business background, the court concludes that defendant Paul Miller understands the nature, consequences and obligations of summary judgement. First, the plaintiff served defendant Paul Miller with the notice to pro se litigants required by Local Rule 56(b).  Second, the plaintiff's memorandum states the nature and consequences of summary judgment.  Third, defendant Paul Miller submitted a complete response to the plaintiff's motion that indicates that he understands summary judgment.  The defendant's opposition contains affidavits and numerous exhibits.

### III. DISCUSSION

"At its heart, the [FDCPA] is a consumer protection statute, and violators are subject to strict liability.  Thus, a single

6

violation of section 1692e is sufficient to establish civil liability under the FDCPA.  <u>See</u> 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter")."  <u>Fields v. Western Mass. Credit Corp.</u>, 479 F. Supp. 2d 287, 290 (D. Conn. 2007)(citation omitted).  <u>See</u> <u>also</u> <u>Richmond v. Higgins</u>, 435 F.3d 825, 828 (8th Cir. 2006)("The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' § 1692(a), and debt collectors are liable for failure to comply with 'any provision' of the Act.  § 1692k(a).")  There is no genuine issue as to the fact that the plaintiff was a consumer.  To establish that defendant Paul Miller is liable under the FDCPA, the plaintiff must show that defendant Paul Miller acted as a debt collector and that he violated a provision of the FDCPA during the collection of debt.

    **A.   Debt collector**

Defendant Paul Miller contends that he is not a debt collector, has never collected debts, and has exclusively used United Obligations to collect debts acquired by him as Paul Miller Trustee.  He avers that it is his practice to acquire debt via assignment from the original creditor under his "alter ego" Paul Miller Trustee.  He also avers that he filed a trade name certificate.  It is well settled that "[a]lthough a corporation is a legal entity with legal capacity to sue, a fictitious or

7

assumed business name, a trade name, is not a legal entity; rather, it is merely a description of the person or corporation doing business under that name. . . . Because the trade name of a legal entity does not have a separate legal existence, a plaintiff bringing an action solely in a trade name cannot confer jurisdiction on the court." <u>America's Wholesale Lender v. Pagano</u>, 87 Conn. App. 474, 477 (Conn. App. 2005).  It is also well settled that the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534, 536 (7th Cir. 2003).  It is undisputed that defendant Paul Miller acquired debt that was already in default.  In addition, the fact that defendant Paul Miller acquired debt using the trade name Paul Miller Trustee does not shield him from liability.  Thus, there is no genuine issue as to the fact that defendant Paul Miller was a debt collector for purposes of the FDCPA.

**B.   Violation of FDCPA**

"The FDCPA prohibits 'debt collector[s]' from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'  15 U.S.C. § 1692e.  This broad prohibition is typically referred to as the FDCPA's 'general ban.'. . .  In addition to this general ban, section 1692e is divided into sixteen subsections that provide a

non-exhaustive list of prohibited practices." <u>Druther v. Hamilton</u>, No. C09-5503 FDB, 2009 WL 4667376, * 2 (W.D. Wash. Dec. 3, 2009)(citation omitted).  <u>See</u> <u>also</u> <u>Whittiker v. Deutsche Bank Nat. Trust Co.</u>, 605 F. Supp. 2d 914, 937 (N.D. Ohio 2009). Therefore, "it should be emphasized that the use of any false, deceptive, or misleading representation in a collection letter violates § 1692e - regardless of whether the representation in question violates a particular subsection of that provision." <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1320 (2nd Cir. 1993).  "A communication is deceptive for purposes of the Act if it can be reasonably read to have two or more different meanings, one of which is inaccurate."  <u>Campuzano-Burgos v. Midland Credit Management, Inc.</u>, 550 F.3d 294, 298 (3rd Cir. 2008)(quotation marks omitted).

The plaintiff contends that defendant Paul Miller violated § 1692e when he sent the March 11, 2009 email to the plaintiff. The court agrees.

The March 11, 2009 email asserted that it would cost the plaintiff "a fortune in legal fees" were she to dispute her debt, and that her balance would be "in excess of $2000, before legal fees."  Section 1692e(2)(A) prohibits false representation of "the character, amount, or legal status of a debt."  Under Conn. Gen. Stat. § 42-150aa, legal fees in actions on consumer contracts or leases are limited to 15% of the amount recovered.

9

The March 11, 2009 email asserted that the plaintiff would incur a "fortune in legal fees," when in fact under Connecticut law her legal fees could not have exceeded $300 based on a recovery of $2000.

In addition, § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt." (emphasis added).  The March 11, 2009 email misrepresented the nature of defendant Paul Miller's relationship with United Obligations.  The plaintiff knew by no later than March 5, 2009 that United Obligations was attempting to collect debts owed by her.  Defendant Paul Miller's only connections to United Obligations were that he was it's agent for service of process and that he retained United Obligations to collect debts he acquired.  However, in the March 11, 2009 email, in which defendant Paul Miller sought to collect the debts, Paul Miller included, below his name, the name and address of United Obligations, a licensed collection agency.  Thus, he suggested he was from United Obligations when he was not.  Also, although Holly Miller, who was from United Obligations, avers that she was directly involved, Holly Miller's name was never used in the email.

Accordingly, pro se defendant Paul Miller committed at least two violations of the FDCPA when he sent his March 11, 2009 email to the plaintiff, and the plaintiff is entitled to summary

10

judgment on her claim pursuant to the FDCPA.[1]

**IV.  CONCLUSION**

For the reasons set forth above, the plaintiff's Motion for Summary Judgment (Doc. No. 21) is hereby GRANTED.  The Clerk shall enter judgment in favor of the plaintiff on her FDCPA claim against defendant Paul Miller in the amount of $1,000, plus attorneys' fees and costs.

It is so ordered.

Signed this 25th day of March, 2010 at Hartford, Connecticut.

                                        /s/AWT
                              Alvin W. Thompson
                         United States District Judge

---

[1]The plaintiff also asserted claims pursuant to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. and the Connecticut Consumer Collection Agency Act, Conn. Gen. Stat. § 36a-800 et seq., but the motion for summary judgment addresses the FDCPA claim only.